UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LARELL CAMPBELL,

                Petitioner,

      -against-

SUPERINTENDENT, YAPHANK
CORRECTIONAL FACILITY, and LETITIA
JAMES, Attorney General of the State of
New York,

                Respondents.

**MEMORANDUM & ORDER**
25-CV-7068 (HG)

**HECTOR GONZALEZ**, United States District Judge:

      Petitioner Larell Campbell, currently incarcerated at Riverhead Correctional Facility in

Suffolk County, New York, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2241.  ECF No. 1 at 1 ("Petition").[1]  Petitioner challenges his pretrial detention as

unconstitutional on the grounds that the bail imposed by the state court was excessive.  *Id.*  For

the reasons set forth below, the petition is DENIED.

---

[1]     Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations.  The Court refers to the pages assigned by the Electronic Case Files system ("ECF"), except when quoting to transcripts, where the Court cites to the original page number on the native document.

<h1 style="text-align:center">BACKGROUND[2]</h1>

Petitioner was arrested on December 14, 2024, as part of a long-term narcotics investigation conducted by multiple Suffolk County law enforcement agencies and the United States Postal Service.  ECF No. 1 at 21:23; ECF No. 14-2 at 126.  The investigation resulted in a 109-count indictment charging twenty-one individuals.  *See* ECF No. 14-2 at 6–58.  Ultimately, Petitioner was charged with 18 of the 109 Counts, including:  Criminal Possession of a Controlled Substance in the First Degree (Class A-1 felony); Operating as a Major Drug Trafficker (Class A felony); and Conspiracy in the Second Degree (Class B felony), among others.  *See id.* at 8–9, 129.

On April 15, 2025, the state court set Petitioner's bail at $1 million cash, $2 million insured bond, and $5 million partially-secured surety bond.  *See* ECF No. 1 at 4.  In November 2025, Petitioner moved for a reduction of bail; the state court denied his application.  *Id.* at 7–30, 43–48.

On December 23, 2025, Petitioner commenced the instant action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that his pretrial detention is unconstitutional under the Eighth Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment.  *See* ECF No. 1 at 1.  Respondents filed their opposition to the Petition, styled as a "Return," about two months later, *see* ECF No. 14 ("Return"), and Petitioner filed his reply approximately two weeks later, *see* ECF No. 15 ("Reply").

---

[2]     Petitioner does not state any facts in support of his petition and merely submits the November bail hearing transcript in its entirety as an exhibit.  Thus, the Court derives most of the relevant facts from the underlying state court record attached to Respondents' submission.  *See* ECF No. 14-2 (State Court Record).  The facts recited here are undisputed unless otherwise noted.

2

**LEGAL STANDARD**

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). "Under 28 U.S.C. § 2241, federal courts are permitted to entertain habeas corpus petitions from prisoners 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Grafton v. Dzurenda*, No. 20-cv-3052, 2020 WL 9816012, at *1 (E.D.N.Y. Dec. 11, 2020) (quoting 28 U.S.C. § 2241(c)(3)). Although Section 2241 "does not explicitly require the exhaustion of state remedies as a prerequisite to the grant of habeas corpus relief, decisional law has imposed the requirement to accommodate the principles of federalism." *King v. DeMarco*, No. 11-cv-2000, 2011 WL 3471548, at *1 (E.D.N.Y. Aug. 3, 2011) (citing *U.S. ex rel. Scranton v. N.Y.*, 535 F.2d 292, 294 (2d Cir. 1976)).

Where, as here, a state pretrial detainee challenges the bail set by a state court, "a federal court will only inquire into whether the state judge's setting of bail is arbitrary or discriminatory or results in the denial of counsel or the denial of a fair trial." *Bobick v. Schaeffer*, 366 F. Supp. 503, 505 (S.D.N.Y. 1973).

**DISCUSSION**

**I.    Petitioner Failed to Exhaust All Available State Court Remedies**

Principles of comity limit the circumstances under which federal courts may intervene in state criminal matters. *See Garson v. Perlman*, 541 F. Supp. 2d 515, 518–19 (E.D.N.Y. 2008); *Kaufman v. Kaye*, 466 F.3d 83, 86 (2d Cir. 2006) ("[A] federal district court has no power to intervene in the internal procedures of the state courts."). *Younger v. Harris* and its progeny reflect the same restraint, requiring that "the National Government" vindicate federal rights "in

3

ways that will not unduly interfere with the legitimate activities of the States." 401 U.S. 37, 44 (1971).

Of course, there are exceptions to these limits. A petitioner does not offend the principles of comity, or, consequently, *Younger* abstention, if he exhausts all available state court remedies before pursuing his federal court challenge. *See Rose v. Lundy*, 455 U.S. 509, 518 (1982); *Kirschner v. Klemons*, 225 F.3d 227, 234 (2d Cir. 2000) (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608–09 (1975)). Petitioner does not argue that he has exhausted all available state court remedies, but rather relies on *Gerstein v. Pugh* as an exception to *Younger* abstention. *See* ECF No. 15 at 4 (citing *Gerstein v. Pugh*, 420 U.S. 103, 108 n.9 (1975)). This reliance is misplaced. In *Gerstein*, the Supreme Court found that federal intervention was permissible because the detainees had received no judicial hearing of any kind before their pretrial detention. *See* 420 U.S. at 106–09, 108 n.9. Here, there is no such concern, as Petitioner received both an initial bail hearing and a hearing on his bail reduction application, *see* ECF No. 1 at 4, 22–29; ECF No. 14-2 at 63, and *Gerstein* does not absolve Petitioner of the exhaustion requirement.

        A.        *Petitioner Failed to Fairly Present His Federal Claims in State Court*

To exhaust his state remedies, a "petitioner must have fairly presented his federal constitutional claim to an appropriate state court" and must "utilize all available mechanisms to secure appellate review of the denial of that claim." *Moncayo v. Superintendent Green Haven Correctional Facility*, 797 F. Supp. 3d 175, 188 (E.D.N.Y. 2025) (quoting *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981)). A petitioner may fairly present the constitutional nature of his claim, "even without citing chapter and verse of the Constitution," through: (1) reliance on relevant federal cases employing constitutional analysis; (2) reliance on state cases employing constitutional analysis in "like fact situations"; (3) assertion of a claim "in terms so particular as to call to mind a specific right protected by the Constitution"; or (4) "allegation of a pattern of

4

facts that is well within the mainstream of constitutional litigation." *Garson*, 541 F. Supp. 2d at

518 (citing *Daye v. Att'y Gen. of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982) (en banc)).

Petitioner's November 2025 bail reduction application satisfies none of these methods.

His application does not cite any case law employing constitutional analysis. *See* ECF No. 1 at

43–48. Nor does it invoke, explicitly or implicitly, any constitutional right:  Petitioner refers

only to New York Criminal Procedure Law ("CPL") § 510.30[3] and to his inability to afford the

bail set. *See id.* at 43–44. Mere reference to a state statute and mention of "excessive" bail,

without more, does not invoke Petitioner's Eighth Amendment rights or allege a pattern of facts

within the mainstream of constitutional litigation. *See Garson*, 541 F. Supp. 2d at 518;

*Halikipoulos v. Dillon*, 139 F. Supp. 2d 312, 318 (E.D.N.Y. 2001) ("[A]n alleged violation of

New York State's statutes does not necessarily create a federal Constitutional issue before this

Court reviewable on a habeas petition."); *Rodriguez v. McAuliffe*, No. 21-cv-6543, 2022 WL

2193467, at *4 n.1 (E.D.N.Y. June 17, 2022) (similar).  And although Petitioner cites federal

authority and the Constitution in his federal submissions, because he omitted those same

authorities in state court, their inclusion in the instant action does not satisfy *Daye*.  *See*

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (holding that "state prisoners must give the

state courts one full opportunity to resolve any constitutional issues").

   B.  *Petitioner Failed to Pursue  State Habeas Relief*

After the state court denied his bail reduction application, Petitioner took no further

action in any state court, *see* ECF No. 14 at 11, despite New York law providing an available

remedy:  a state habeas corpus petition, *see* N.Y. C.P.L.R. § 7002.  The New York Court of

Appeals and the Second Circuit have both recognized that excessive bail claims may be brought

---

[3]  It appears that Petitioner erroneously cites to CPL § 510.30.  Factors relevant to a court's discretion to set a bail amount are found in CPL § 510.10.

5

in state habeas proceedings. *See People ex rel. Kon v. Maginley-Liddie*, 45 N.Y.3d 100, 105 (2025) (holding that state courts may review the fixing of bail in habeas proceedings "if it appears that the constitutional or statutory standards inhibiting excessive bail or the arbitrary refusal of bail [have been] violated") (quoting *People ex rel. Klein v. Krueger*, 25 N.Y.2d 497, 499 (1969)); *DeMarco*, 2011 WL 3471548, at \*2 (noting that it is "clear that state habeas corpus is available to challenge . . . fixing of bail"). "Even if there were some doubt as to the availability of relief in the New York courts," it would be inappropriate "to guess what constitutional issues New York courts will or will not entertain in a habeas proceeding," and this Court "still would give [state] courts the first chance to review their alleged errors so long as they have not authoritatively shown that no further relief is available." *Brown v. Wilmot*, 572 F.2d 404, 406 (2d Cir. 1978); *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 490–91 (1973) (recognizing the importance of allowing "state appellate courts, which can develop and correct errors of state and federal law and most effectively supervise and impose uniformity on trial courts," to act in the first instance). Petitioner's failure to seek state habeas relief is an independent failure to exhaust his state remedies. *See Moncayo*, 797 F. Supp. 3d at 188.

### C.    No Exception to the Exhaustion Requirement Applies

Exceptions to the exhaustion requirement are limited to instances where "there is no opportunity to obtain redress in state court or if the [state] corrective procedure is so clearly deficient as to render futile any effort to obtain relief." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981). Petitioner contends that a lengthy state court adjudication "would render his application moot and meaningless." ECF No. 15 at 2. However, "[t]he passage of time, alone, is not sufficient to rise to the level of a complete absence of a mechanism for correction of a constitutional violation." *Jordan v. Bailey*, 985 F. Supp. 2d 431, 437 (S.D.N.Y. 2013), *aff'd*, 570

F. App'x 42 (2d Cir. 2014).  Petitioner's reliance on *Hensley v. Municipal Court*, 411 U.S. 345

(1973), and *Braden*, 410 U.S. 484, *see* ECF No. 15 at 3, does not save his Petition because  the

petitioners in those cases had already exhausted their available state remedies, *see Hensley*, 411

U.S. at 353; *Braden*, 410 U.S. at 489.

Here, as the Court has already discussed, Petitioner sought no state remedy beyond his

single bail reduction application.  No exception excuses that failure; Petitioner had ample

opportunity to "obtain redress in state court," and there is no allegation that the state procedure

"is so clearly deficient as to render futile any effort to obtain relief."  *See Duckworth*, 454 U.S. at

3.  That reason alone warrants denial of his Petition.  *See Moncayo*, 797 F. Supp. 3d at 188.  But

even if it was not enough, the Petition nevertheless fails on the merits.

## II.      The Petition Also Fails on the Merits

### A.       *Petitioner's Due Process Rights Were Not Violated*

*Mathews v. Eldridge*, 424 U.S. 319 (1976), supplies the test for determining whether

Petitioner's detention violates his due process rights.  *See Francis v. Fiacco*, 942 F.3d 126, 143–

45 (2d Cir. 2019).  Under that test, the Court balances:  (1) "the private interest that will be

affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through

the procedures used, and the probable value, if any, of additional or substitute procedural

safeguards"; and (3) "the Government's interest, including the function involved and the fiscal

and administrative burdens that the additional or substitute procedural requirement would entail."

*Mathews*, 424 U.S. at 335.

With respect to the first *Mathews* factor, Petitioner's interest in freedom from

imprisonment pending trial is substantial, and implicates "perhaps the most fundamental interest

that the Due Process Clause protects."  *Fiacco*, 942 F.3d at 141.  But that does not mean

Petitioner's interest is absolute:  "the Government's regulatory interest in community safety can,

7

in appropriate circumstances, outweigh an individual's liberty interest," and an "arrestee may be incarcerated until trial if he presents a risk of flight." *United States v. Salerno*, 481 U.S. 739, 748–49 (1987).

If the first *Mathews* factor weighs in Petitioner's favor, the second factor—the risk of an erroneous deprivation of the private interest—weighs against it because the risk of erroneous deprivation is low if not entirely absent. In fact, nothing about either bail-related proceeding suggests the procedures the state court used were erroneous in any way. Generally, courts that have found a risk of erroneous deprivation have been faced with a distinct lack of notice and process. *See, e.g.*, *Fiacco*, 942 F.3d at 143–44; *Washington v. City of New York*, No. 18-cv-12306, 2019 WL 2120524, at *18–20 (S.D.N.Y. Apr. 30, 2019) (no pre-deprivation notice or process before prison transfer). That is not the case here. As a preliminary matter, Petitioner's bail was set in accordance with CPL §§ 510.10 and 530.40 and, later, he received a second, full opportunity to be heard on his bail reduction application. *See* ECF No. 14 at 2–3; *see generally* ECF No. 1 at 6–30. At that point, the state court properly considered the gravity of Petitioner's liberty interest but identified specific concerns it had about his risk of flight given the severity of the charges. *See* ECF No. 1 at 22:20–23:16. Moreover, the probable value of additional safeguards is low. Unlike the ministerial corrections at issue in *Fiacco* and *Washington*, additional process here would likely result in at least one more hearing. Another hearing makes little practical sense, especially where, as here, the state court has already twice adhered to the CPL. An additional hearing, therefore, offers little value.

The third factor—the government's interest—also weighs against Petitioner. The government has a particularly strong interest in protecting the community and ensuring that a defendant appears at trial and it is well settled that "the Government has a substantial interest in

8

ensuring that persons accused of crimes are available for trials." *See Maryland v. King*, 569 U.S. 435, 452–53 (2013) (quoting *Bell v. Wolfish*, 441 U.S. 520, 534 (1979)).

On balance then, the *Mathews* factors weigh in favor of the State.  The record reflects that Petitioner's due process rights were not violated and that he received the full process to which he is entitled:  a bail determination made in accordance with the CPL and two distinct opportunities to be heard.[4]

### B.    The State Court Set an Appropriate Bail Amount

Federal review of a state court's bail determination is narrow:  the state court's judgment carries "a presumption of regularity," and the petitioner "bears the burden of showing that there is no rational basis in the record" for the bail decision.  *Finetti v. Harris*, 609 F.2d 594, 600 (2d Cir. 1979); *see also Rodriguez*, 2022 WL 2193467, at *4 ("Federal habeas courts do not sit as appellate courts to review the use or abuse of discretion of state courts in the granting or withholding of bail.").  A federal court has "no license to substitute [its] judicial judgment and discretion for that of the state court." *Hayden v. Keane*, 154 F. Supp. 2d 610, 615 (S.D.N.Y. 2001), *aff'd*, 34 F. App'x 796 (2d Cir. 2002).  For the reasons set forth below, the amount of Petitioner's bail is proper.

Under CPL § 510.10(1), the bail-setting court "shall make an individualized determination as to whether the principal poses a risk of flight to avoid prosecution," considering enumerated factors that include the principal's activities and history, the charges he faces, his criminal conviction record, his record with respect to flight to avoid prosecution, and, where monetary bail is authorized, his individual financial circumstances.  *See* CPL § 510.10(1)(a)–(j).

---

[4]    Petitioner's passing invocation of the Equal Protection Clause fares no better, as he identifies no discriminatory treatment in the setting of his bail, and the record reflects none.  *See Giordano v. City of New York*, 274 F.3d 740, 751 (2d Cir. 2001).

The bail-setting court must consider the available information, but it need not "engage in a lengthy catechistic discussion of all bail factors" listed in the statute. *Kon*, 45 N.Y.3d at 105 (quoting *People ex rel. Griffin v. Brann*, 147 N.Y.S.3d 313, 324 (Sup. Ct. Bronx Cnty. 2020)); *see also People ex rel. Rankin v. Brann*, 41 N.Y.3d 436, 443 (2024).

The record reflects precisely such an individualized determination. The state court considered Petitioner's history as a "prior violent felony offender," ECF No. 1 at 20:20–21, as part of "the principal's activities and history," *see* CPL § 510.10(1)(a). With respect to "the charges facing the principal, " CPL § 510.10(1)(b), the state court noted the "serious allegations" against Petitioner—*e.g.*, numerous drug charges, operating as a major trafficker, criminal possession and sale of a controlled substance, and conspiracy—and the "significant evidence" supporting them, ECF No. 1 at 20:8–9, which includes over 18,000 intercepted communications and more than five kilograms of seized fentanyl, heroin, cocaine, and methamphetamine, totaling over one million dollars' worth of narcotics, ECF No. 14-2 at 123; ECF No. 1 at 15:4–5. It further observed that Petitioner, for the first time in his criminal history, faces a life sentence, which may make him significantly more of a flight risk. ECF No. 1 at 23:15–16; *see United States v. Zhang*, No. 22-cr-0208, 2022 WL 17420740, at *2–3 (E.D.N.Y. Aug. 3, 2022), *aff'd*, 55 F.4th 141 (2d Cir. 2022) (noting the importance of the weight of the evidence and that where a defendant "faces mandatory life imprisonment should he be convicted, an increased probability of conviction increases his risk of flight"). The state court also considered the "principal's criminal conviction record," CPL § 510.10(1)(c), noting that Petitioner was on parole when he

10

came before the court,[5] *see* ECF No. 1 at 19:19–21; *see also Zhang*, 2022 WL 17420740, at *3 (holding that defendant's history of drug distribution "does not inspire confidence in his willingness to abide by any conditions of release").  The court also weighed considerations beyond the statutory factors, as it may.  *See Rankin*, 41 N.Y.3d at 443.  But it declined to rely on the assurance that Petitioner is known in his community as a "man of his word" where that community, by defense counsel's own admission, "includes drug dealers," ECF No. 1 at 18:11–19:10, and it noted that the charged conspiracy includes several of Petitioner's family members, raising concerns about the danger posed by his release, *id.* at 17:1–7.[6]  Taken together, the record reflects that the state court ultimately weighed factors pertaining to Petitioner's prior criminal history, the severity of the allegations, potential character issues, and the original bail-setting rationale more heavily than Petitioner's financial circumstances, finding that the former overcame Petitioner's arguments for bail reduction.

Petitioner's contention that the bail "could not possibly have been met by an accused of his . . . modest background and circumstances," *id.* at 4:22–5:3, does not carry his burden. Although Section 510.10(1)(f) allows for an assessment of the "principal's individual financial circumstances," it is one factor among the 10 to be considered, *see* CPL § 510.10(1)(f), and the weight assigned to each factor lies within the discretion of the state court, not this one, *see Rado v. Meachum*, 699 F. Supp. 25, 26 (D. Conn. 1988).  In any event, "[a] bail setting is not

---

[5]  While Petitioner disputed the fact that he was on parole at the time of arrest, the State pointed to evidence suggesting that he was on parole during the commission of the charged offenses.  ECF No. 1 at 22:4–15.

[6]  While not listed in the state court's final considerations, evidence was also submitted that Petitioner's vehicle contained a loaded weapon, which was inoperable when tested, but "fired just fine" after being cleaned.  ECF No. 1 at 16:5–7; *see* CPL § 510.10(1)(h) (listing "principal's history of use or possession of a firearm" as a relevant factor in setting bail).

constitutionally defective merely because a defendant is unable to satisfy the requirements." *Griffin*, 147 N.Y.S.3d at 327 (quoting *United States v. McConell*, 847 F.2d 811, 814 (5th Cir. 1988)).

Thus, the record reflects that the state court's determination was neither arbitrary nor discriminatory. *See Finetti*, 609 F.2d at 600. And because Petitioner has failed to show "that there is no rational basis in the record" for the bail that was set, there is no basis for this Court to disturb the state court's determination. *See id.*

**CONCLUSION**

For these reasons, the Petition for a writ of habeas corpus pursuant to Section 2241 is DENIED. The Clerk of Court is respectfully directed to enter judgment consistent with this Order and to close this case.

SO ORDERED.

*/s/ Hector Gonzalez*
　 HECTOR GONZALEZ
　 United States District Judge

Dated: Brooklyn, New York
　　　 August 4, 2026

12
